**Jose PINEDA, Petitioner**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 08SC756.**

Supreme Court of Colorado, En Banc.

May 10, 2010.

As Modified on Denial of Rehearing June 1, 2010.

Douglas K. Wilson, Public Defender, Nathaniel E. Deakins, Deputy Public Defender, Denver, CO, for Petitioner.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Senior Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, CO, for Respondent.

Justice BENDER delivered the Opinion of the Court.

In this case, we review the court of appeals' affirmance of the trial court's denial of defendant Jose Pineda's motion to suppress evidence of heroin found in his vehicle when he was arrested. *People v. Pineda,* No. 06CA0157, 2008 WL 3130394 (Colo.App. Aug. 7, 2008). In their respective rulings, the trial court and court of appeals relied on *People v. Kirk,* 103 P.3d 918 (Colo.2005), and other Colorado precedent to hold that the search-incident-to-arrest exception is a bright-line rule that allows officers to search the entire passenger compartment of a vehicle whenever one of its recent occupants has been arrested.

After the court of appeals issued its decision, however, the Supreme Court decided *Arizona v. Gant,* — U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which reformulated the application of the search-incident-to-arrest exception involving motor vehicles. In *Gant,* the Court held that the search-incident-to-arrest exception applies only when the search is necessary to protect officer safety or to prevent the destruction of evidence, or when it is reasonable to believe the vehicle contains evidence relevant to the crime of arrest. *Id.* at 1723.

Because *Gant* altered the search-incident-to-arrest exception, we can no longer rely on the court of appeals' pre-*Gant* analysis. It is unnecessary, however, for us to decide whether the search-incident-to-arrest exception continues to apply in this case in light of the rationale articulated in *Gant.* Instead, we rely on the alternate ground that the inventory-search exception justifies the search of Pineda's vehicle.

The inventory-search exception allows officers to conduct an administrative inventory search of a vehicle after it has lawfully been taken into custody, provided the search is conducted in accordance with the policies and procedures of the police department and is not merely a pretext for an investigatory search. *See Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *People v. Hauseman,* 900 P.2d 74, 79–80 (Colo.1995). The undisputed evidence in this case demonstrates that the officers had ample probable cause to stop and arrest Pineda and that they followed departmental policies and procedures in taking the vehicle into custody and inventorying its contents. Therefore, we hold that the officers conducted a valid inventory search of Pineda's vehicle. Accordingly, we affirm the court of appeals on different grounds.

## I. Facts and Proceedings Below

Before trial, Pineda filed a motion to suppress evidence of heroin seized from the car he was driving when arrested. He argued that the police seized the heroin pursuant to a warrantless search, which was unjustified either as a search incident to arrest or as an inventory search. The trial court conducted an evidentiary hearing that established the facts detailed here.

Several weeks before Pineda's arrest, the Aurora Police Department set up a controlled purchase of heroin using a confiden-

tial informant. The informant called a heroin dealer known as "My Boy" and arranged to meet him in a parking lot in Aurora, Colorado. A few minutes after the informant called, a man (later identified as Pineda) arrived in a white Nissan displaying temporary registration plates. Pineda exited the vehicle, sold three balloons filled with heroin to the informant, and drove away. Officer Prince, who witnessed the controlled purchase, followed the vehicle in a marked car and stopped it after noticing that it had a malfunctioning rear brake light. Pineda provided Officer Prince with a Mexican Identification Card that listed what turned out to be a nonexistent address. Officer Prince allowed Pineda to leave without issuing him a citation.

The following day, Officer Poppe, who also witnessed the controlled purchase, noticed the same white Nissan displaying different temporary registration plates.

Several weeks later, Officer Poppe saw the white Nissan again, this time displaying a third set of temporary registration plates. Officer Poppe watched the vehicle and saw a man (later identified as Pineda) exit the vehicle and enter a nearby house. Officer Poppe waited until Pineda left the house, returned to his vehicle, and drove away. Pineda was the sole occupant of the vehicle.

Officer Poppe followed the vehicle and called for a marked police car to stop it and identify the driver. Officer Peet responded to this call. As Officer Peet drove to the scene, Officer Poppe observed Pineda make several illegal lane changes. He informed Officer Peet about these infractions. When Officer Peet arrived he pulled his car behind Pineda's vehicle. He noticed that Pineda's temporary registration plates had been visibly altered, listing the expiration month as "DIC" instead of "DEC" for December.

Officer Peet then initiated a traffic stop, and Pineda pulled over into the right-hand lane of Sixth Avenue, a major thoroughfare in Aurora, Colorado. Pineda gave Officer Peet a driver's license that did not match any record at the Department of Motor Vehicles. Officer Peet then arrested Pineda. He testified that he arrested Pineda for "[d]riving without a valid driver's license, and driving a vehicle with altered registration plates."

After being arrested, Pineda was placed in the back seat of a marked police car. Several more officers arrived on the scene. Officer Prince, who witnessed the earlier controlled purchase, identified Pineda as the man who sold heroin to the confidential informant. While this was happening, Sergeant Graham, another officer called to the scene, determined that Pineda's vehicle needed to be taken into custody and towed. Sergeant Graham testified that he made this determination because Pineda had parked his car in a traffic lane on a busy avenue and no one was present to take possession of the vehicle. Sergeant Graham also stated that it is the policy and procedure of the Aurora Police Department to take custody of and tow any vehicle involved in an arrest if there is no one present to take possession of the vehicle. This is the department's policy even when the vehicle is not parked on a busy thoroughfare. Sergeant Graham testified that, "whenever we arrest someone out of a vehicle, we tow the vehicle if they can't provide a driver for the vehicle to release it to." He explained, "[W]e don't want to take responsibility for the vehicle being left somewhere else."

Sergeant Graham further testified that whenever the police take custody of and tow a vehicle, they must perform an inventory search of the vehicle's contents. He stated that an inventory search is "required by directive and policy," and that police perform this search "to make sure that whatever personal property might be in there from the vehicle ... is noted in the vehicle or on the report that goes with that."

Officer Graham testified that he followed this procedure in the present case. On cross-examination, the defense attorney asked Sergeant Graham if he saw Officer Peet arrest Pineda. Sergeant Graham responded, "Yes." The defense attorney then asked, "And upon that arrest, you recognized that you need[ed] to do an inventory search?" Sergeant Graham answered, "Correct."

While performing the inventory search, Sergeant Graham found a can of deodorant under the front passenger seat. He noticed

that the can had a removable bottom and recognized it as a "can safe." He unscrewed the bottom of the can and saw that it was stuffed with paper towels. He then gave the can to Officer Poppe, who had begun to assist in the search. Before Officer Poppe could look inside the can, a K–9 unit arrived on the scene to investigate the car. Officer Poppe put the bottom back on the can and placed it on top of the vehicle. The police dog alerted on the front passenger area of the car, where the can had been found.

After the K–9 unit left, Officer Poppe continued with the inventory search. He opened the can, removed the paper, and found several bags filled with heroin. Once again, Sergeant Graham explained that the Aurora Police Department's policies and procedures require officers to look inside such containers during an inventory search. The prosecution asked Sergeant Graham, "Are you required to search throughout the vehicle and look anywhere where you might find something susceptible to the inventory?" Sergeant Graham responded, "Yes." The prosecution followed up by asking, "[W]hen you're conducting an inventory search, is it your understanding of Aurora policies that you would be required to look inside a[can] safe to see what's inside it?" Sergeant Graham responded, "Yes, it is."

Based on the testimony presented at the hearing, the trial court denied Pineda's motion to suppress the evidence of heroin found in his vehicle. The trial court did not address the inventory-search exception, however, because our precedent at the time established a bright-line rule allowing officers to search the passenger compartment of a vehicle incident to a recent occupant's arrest, irrespective of whether the occupant could reach inside the vehicle to threaten an officer's safety or destroy evidence. At trial, Pineda was convicted of distribution of a controlled substance, possession of a controlled substance, and use of fictitious license plates. He appealed, and the court of appeals affirmed, also relying on the search-incident-to-arrest exception.

## II. Discussion

Pursuant to the United States Constitution and article II, section 7 of the Colorado Constitution, a warrantless search is presumptively unreasonable unless it falls under a specifically established and delineated exception to the warrant requirement. *People v. Savedra,* 907 P.2d 596, 598 (Colo. 1995). One such exception exists for searches incident to a lawful arrest. *Id.; Kirk,* 103 P.3d at 922. Another exception permits officers to conduct an administrative inventory search of a vehicle after that vehicle has lawfully been taken into custody. *Bertine,* 479 U.S. at 374, 107 S.Ct. 738.

### A. Searches Incident to Arrest

Officers conducting a lawful arrest are generally permitted to search the person of the arrestee and the area immediately within the arrestee's control. *People v. H.J.,* 931 P.2d 1177, 1183 (Colo.1997). Until recently, our precedent established that this was a bright-line rule allowing officers to search the entire passenger compartment of a vehicle after one of its recent occupants had been arrested, irrespective of whether the arrestee could reach inside the vehicle to threaten an officer's safety or to destroy evidence. *See e.g., Savedra,* 907 P.2d at 598 (citing *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). The court of appeals applied this rule in the present case. *Pineda,* No. 06CA0157, slip. op. at 9, 2008 WL 3130394 (Colo.App. Aug. 7, 2008).

Several months after the court of appeals issued its opinion, however, the Supreme Court decided *Gant,* — U.S. —, 129 S.Ct. 1710, 173 L.Ed.2d 485, which reformulated the application of the search-incident-to-arrest exception involving motor vehicles. In *Gant,* the Court explained that the search-incident-to-arrest exception must be "commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id.* at 1716 (citing *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)). The Court therefore concluded that "police [may] search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the

search." *Id.* at 1719. The Court also stated that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (quoting *Thornton v. United States,* 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring in judgment)).

In light of *Gant* and the cases announced today interpreting that decision, *see People v. Chamberlain,* 229 P.3d 1054 (Colo.2010); *People v. McCarty,* 229 P.3d 1041 (Colo. 2010), we can no longer rely on the court of appeals' pre-*Gant* determination concerning the search-incident-to-arrest exception. It is unnecessary, however, for us to consider whether that exception continues to apply in this case post-*Gant* because we decide this case on alternate grounds. Namely, we hold that the inventory-search exception applies in this case.

### B. Inventory Searches

At the hearing on the motion to suppress, the People argued that the inventory-search exception justified the search of Pineda's vehicle. Several police officers testified to the facts controlling the inventory-search issue, and these facts were undisputed. Therefore, we conduct a de novo review of the People's contention that the inventory-search exception applies in this case. *See People v. Valdez,* 969 P.2d 208, 211 (Colo.1998) ("When the controlling facts are undisputed, the legal effect of those facts constitutes a question of law which is subject to de novo review.").

An officer who has lawfully taken a vehicle into custody may conduct an inventory search of the contents of that vehicle. *See Bertine,* 479 U.S. at 371, 107 S.Ct. 738; *People v. Litchfield,* 918 P.2d 1099, 1105 (Colo. 1996). Such searches are administrative. They are designed to protect the owner's property while it is in police custody, to insure against claims concerning lost or damaged property, and to protect the police from any danger posed by the contents of the vehicle. *Bertine,* 479 U.S. at 372, 107 S.Ct. 738; *Litchfield,* 918 P.2d at 1105.

In the absence of evidence showing that the police "acted in bad faith or for the sole purpose of investigation," inventory searches conducted according to police department policies and procedures are generally considered reasonable. *Bertine,* 479 U.S. at 373, 107 S.Ct. 738. However, in determining whether the search was conducted in bad faith, "the officer's subjective intent in carrying out the challenged arrest and resulting inventory is not controlling." *Hauseman,* 900 P.2d at 79. "An officer's hope of finding incriminating evidence during an otherwise valid search does not, without more, indicate a pretextual motive for his or her conduct." *Id.* Instead, "the inquiry must focus on the objective reasonableness of the officer's conduct, and the trial court must determine whether a reasonable officer in the particular circumstances of the case would have engaged in the challenged conduct absent an illegitimate motive." *Id.*

Pineda argues that the officers arrested him in bad faith and that they conducted the inventory search as a mere pretext for an investigatory search. The evidence, however, fails to support this contention. The record shows that Officer Poppe called for a marked police car to stop Pineda's vehicle and identify the driver. He did not ask that Pineda be arrested, nor did he take part in the arrest. There is no evidence supporting Pineda's suggestion that Officer Poppe orchestrated the arrest solely to conduct an investigatory search of Pineda's vehicle.

Likewise, Officer Peet's undisputed testimony establishes that he had sufficient probable cause to arrest Pineda for driving without a license and for driving a vehicle with altered registration plates. In addition, after Officer Peet arrested Pineda, a third officer identified Pineda as the man who sold the heroin to the confidential informant during the controlled buy. In other words, the undisputed evidence demonstrates that the police had ample probable cause to arrest Pineda and that they acted reasonably in doing so.

After the arrest, Sergeant Graham and Officer Poppe took custody of the vehicle and inventoried its contents. Sergeant Graham's

undisputed testimony establishes that he did so according to the policies and procedures of the Aurora Police Department. It appears that the officers had few other options under the circumstances. Pineda parked his car in the right-hand lane of a busy avenue. No one was present to take possession of the vehicle, and the officers could not leave it blocking traffic. Therefore, they took custody of the vehicle and towed it. Not only does this appear reasonable under the circumstances, but departmental policies and procedures also required the officers to take custody of the vehicle and to conduct an inventory search as part of that process.

In the end, although the use of a K–9 unit, for example, may suggest that the officers suspected the car contained drugs, such suspicions do not establish a pretextual motive for arresting Pineda and searching his vehicle. *Hauseman,* 900 P.2d at 79. Instead, the undisputed evidence establishes that the officers had probable cause to arrest Pineda. It also establishes that the officers acted in an objectively reasonable manner when they adhered to departmental policies and procedures by taking custody of the vehicle and conducting an inventory of its contents. Therefore, we conclude that the evidence discovered in Pineda's vehicle was found pursuant to a valid inventory search.

## III. Conclusion

For the reasons stated above, we affirm the court of appeals on different grounds.