2014 CO 71

**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Christopher VAUGHN, Defendant– Appellee.**

**Supreme Court Case No. 14SA70**

Supreme Court of Colorado.

September 22, 2014

Attorneys for the Plaintiff–Appellant: George H. Brauchler, District Attorney, Eighteenth Judicial District, Richard H. Orman, Senior Deputy District Attorney, Centennial, Colorado.

Attorneys for Defendant–Appellee: The Reisch Law Firm, LLC, R. Scott Reisch, Shannon D. Roy, Denver, Colorado.

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶1 The People bring this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2014), seeking review of the trial court's order suppressing drug evidence that was seized after a traffic stop.

¶2 The undisputed evidence in this case establishes that the police officer who seized the drug evidence had reasonable suspicion to stop the vehicle driven by the Defendant, Christopher Vaughn, as well as probable cause to arrest Vaughn. It also establishes that the officer acted pursuant to a standardized departmental policy in deciding to impound the vehicle—after arresting its sole occupant—and in inventorying its contents. Accordingly, we hold that the evidence was seized as the result of a valid inventory search, and we reverse the trial court's order.

## I. Facts and Procedural History [1]

¶3 In September of 2012, Officer John Moreland observed a traffic violation at the intersection of Clinton Street and East Col-

---

1. Prior to trial, Vaughn filed a motion to suppress the drug evidence. The trial court conducted an evidentiary hearing on that motion, establishing the facts detailed here.

fax Avenue in Aurora, Colorado. Specifically, he saw a vehicle driven by Vaughn, traveling south on Clinton Street, turn east into the far right-hand lane of Colfax Avenue, rather than into the far left-hand lane.[2] Before stopping the vehicle, Officer Moreland used his in-car computer and received a "no record" result for the vehicle's license plates from the Department of Motor Vehicles' ("DMV") database. Thereafter, he pulled Vaughn over and asked for Vaughn's driver's license, vehicle registration, and proof of insurance. The registration information indicated that Vaughn was not the registered owner of the vehicle. Using his in-car computer and the DMV's 24–hour hotline, Officer Moreland also discovered that Vaughn's driver's license was suspended.[3]

¶ 4 At the suppression hearing, Officer Moreland testified that upon discovering this license suspension he decided to arrest Vaughn for driving with a suspended license and to have the vehicle towed and impounded.[4] After calling for a backup car, he told Vaughn that his driver's license was suspended, took Vaughn's keys, and asked Vaughn to step out of the vehicle and sit on the curb. Once Vaughn was on the curb, Officer Moreland began searching the vehicle. Using the vehicle's ignition key to open the locked glove compartment, he found a larger bag containing smaller bags filled with crack cocaine. Shortly after opening the glove compartment and discovering this crack cocaine, Officer

Moreland handcuffed Vaughn and transported him to jail.

¶ 5 Additionally, Officer Moreland testified that he searched the vehicle pursuant to the Aurora Police Department's ("APD") inventory search policy. This policy provides that an APD officer must document all items in a vehicle—including any items in a glove box or a container—prior to impounding that vehicle.[5] Officer Moreland explained that this policy was designed to secure any dangerous or valuable items stored in the vehicle.

¶ 6 After hearing Officer Moreland's and Vaughn's testimony,[6] the trial court granted Vaughn's motion to suppress the drug evidence found in the vehicle. The trial court found that there was insufficient probable cause for Officer Moreland's search under the automobile exception, as probable cause is required for non-inventory searches of automobiles. *See People v. Hill,* 929 P.2d 735, 739 (Colo. 1996) (noting that probable cause is required when a search is performed under the so-called "automobile exception"). The trial court also found that the search was inadmissible under the inventory search exception because Officer Moreland was not *required* to arrest someone for the "summons-able" offense of driving with a suspended license.

## II. Analysis

¶ 7 After providing the basis for our jurisdiction and the applicable standard of review,

---

2. Colorado law provides that "[w]henever practicable, the left turn shall be made to the left of the center of the intersection so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as such vehicle on the roadway being entered." § 42–4–901(1)(b), C.R.S. (2014).

3. Vaughn testified that the DMV's database and hotline indicated that Vaughn's license was suspended due to a clerical error. This error is immaterial to our analysis regarding the propriety of Officer Moreland's search because the trial court found that Officer Moreland acted on the good-faith belief that Vaughn's license had, in fact, been suspended. *Cf. People v. Blehm,* 983 P.2d 779, 796 (Colo. 1999) (upholding the trial court's denial of a motion to suppress evidence resulting from a search incident to lawful arrest because the police officers relied in good faith on an arrest warrant that, unbeknownst to them, had been previously vacated).

4. Under the Aurora Municipal Code, there are multiple circumstances when police officers are authorized, "at their discretion, to remove or have removed ... a vehicle from a street or any public way ... to a garage or other impound facility designated or maintained by the police department." Aurora, Colo., Code of Ordinances § 134–37 (2014). One such circumstance is when a driver is taken into custody by the police department. *Id.* at § 134–37(a)(5).

5. Because Officer Moreland transported Vaughn to jail immediately after finding the crack cocaine, a backup officer documented the items found in the vehicle.

6. Vaughn did not contest any material portions of Officer Moreland's testimony.

we apply a three-step analysis to determine whether Vaughn's arrest and the resulting inventory search of his vehicle violated the Fourth Amendment. First, we decide whether Officer Moreland had reasonable suspicion to stop the vehicle Vaughn was driving. Because we conclude that Officer Moreland had reasonable suspicion, we next determine whether Vaughn's arrest was valid—i.e., whether his arrest was based on probable cause. Because we determine that Officer Moreland had sufficient probable cause to arrest Vaughn, we next consider whether the inventory search here was conducted pursuant to a standardized departmental policy.

## A. Jurisdiction and Standard of Review

¶ 8 The People may seek an interlocutory appeal of a trial court order in certain narrow circumstances. As applicable here, C.A.R. 4.1(a)(1) and section 16–12–102(2) vest this Court with jurisdiction to hear interlocutory appeals when a trial court suppresses evidence due to a purportedly unlawful search and seizure.

¶ 9 When reviewing a trial court's suppression order, we give deference to the trial court's findings of fact but review its application of law de novo. *People v. Allison*, 86 P.3d 421, 426 (Colo. 2004); *People v. Rivas*, 13 P.3d 315, 320 (Colo. 2000).

## B. Officer Moreland's Initial Traffic Stop Was Constitutional

¶ 10 The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV; *accord* Colo. Const. art. II, § 7. Generally speaking, warrantless searches violate constitutional guarantees because they are presumptively unreasonable. *Hill*, 929 P.2d at 739. When police obtain evidence in violation of the Fourth Amendment, the exclusionary rule ordinarily bars the prosecution from introducing that evidence against

the defendant in a criminal case. *People v. Gutierrez*, 222 P.3d 925, 941 (Colo. 2009); *see also* Crim. P. 41(e) (providing for the motions procedure to suppress evidence obtained via an unlawful search and seizure).

¶ 11 An investigatory stop, including a traffic stop, does not violate the Fourth Amendment's protections when there are specific, articulable facts that give rise to an officer's reasonable suspicion of criminal activity. *People v. Vissarriagas*, 2012 CO 48, ¶ 9, 278 P.3d 915. In the context of traffic stops, an officer need only have a reasonable suspicion of a traffic violation—i.e., an objectively reasonable basis to believe that a driver has committed a traffic offense—in order to pull the driver over. *See id.*; *People v. Marquez*, 195 P.3d 697, 700 (Colo. 2008). Consequently, an officer's subjective motives for stopping a driver are irrelevant in determining whether an officer had reasonable suspicion. *Vissarriagas*, ¶ 9.[7]

¶ 12 Applying these standards here, we hold that Officer Moreland's initial traffic stop was supported by reasonable suspicion. It is undisputed that Officer Moreland directly witnessed Vaughn violate the traffic code by making an illegal turn. Officer Moreland had an objectively reasonable basis to stop Vaughn not only because he personally observed this traffic violation, but also because his in-car computer indicated that there was no registration record associated with the vehicle's license plate. Thus, he had two independent, objectively reasonable bases underlying his suspicion that the traffic code was being violated or was about to be violated that he was able to articulate to the court. *See People v. Arias*, 159 P.3d 134, 138 (Colo. 2007).

¶ 13 Because we conclude that Officer Moreland's initial traffic stop was constitutionally permissible, we now consider the propriety of Officer Moreland's search by

---

7. To the extent that *Vissarriagas*; *People v. Hauseman*, 900 P.2d 74 (Colo. 1995); and *Pineda v. People*, 230 P.3d 1181 (Colo. 2010) can be interpreted as permitting inquiry into the subjective intent of an officer during a routine traffic stop or an arrest, we disapprove of this interpretation. As the United States Supreme Court has

made clear, " '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.' " *Arkansas v. Sullivan*, 532 U.S. 769, 772, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (alteration in original) (quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

examining the validity of both the precipitating arrest and the inventory search itself.

### C. Officer Moreland's Arrest and Inventory Search Were Constitutional

¶ 14 A warrantless search is presumptively unreasonable—i.e., it violates the Fourth Amendment—unless the search falls within an exception to the warrant requirement. *People v. Kluhsman*, 980 P.2d 529, 534 (Colo. 1999). One such exception permits officers to conduct an inventory search of a vehicle without a warrant based on probable cause when that vehicle is lawfully impounded by law enforcement officials. *Colorado v. Bertine*, 479 U.S. 367, 371–72, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (noting that because inventory searches further police caretaking procedures, "[t]he policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause" (citation omitted)). An inventory search conducted in accordance with an established, standardized policy is generally considered reasonable in the absence of evidence that the officers conducted a search with impermissible motives—i.e., "in bad faith or for the sole purpose of investigation." *Pineda v. People*, 230 P.3d 1181, 1185 (Colo. 2010) (quoting *Bertine*, 479 U.S. at 373, 107 S.Ct. 738). Here, Officer Moreland testified that the APD had a policy to tow, inventory, and impound cars when officers arrest drivers. Thus, we must determine if the arrest was supported by probable cause.

¶ 15 Probable cause to arrest, which is determined by a practical and nontechnical standard, exists when the objective facts and circumstances available to a reasonably cautious officer warrant a belief that an offense has been or is being committed by the person arrested. *People v. McCoy*, 870 P.2d 1231, 1235 (Colo. 1994). Officer Moreland's undisputed testimony established that there was no record associated with the license plates on the vehicle Vaughn was driving and that Vaughn was driving a vehicle that was not registered to him. Officer Moreland's testimony further established that the officer obtained information from his in-car computer that Vaughn's license was suspended, and that he took the additional step of verifying this suspension with the 24-hour DMV hotline. In other words, the information available to Officer Moreland would have made a reasonably cautious officer believe a traffic offense had been committed, or was being committed, by Vaughn; indeed, the trial court found that Officer Moreland would have had a good-faith basis for issuing Vaughn a citation. That Officer Moreland was not *required* to arrest Vaughn for driving with a suspended license—and could have issued a summons instead—is irrelevant, as Vaughn's arrest was both permissible and objectively reasonable.

¶ 16 Because he made a proper arrest, Officer Moreland also necessarily had the authority under APD policy to conduct an inventory search of the vehicle Vaughn was driving. Indeed, Officer Moreland's inventory search was conducted pursuant to standardized APD criteria. Officer Moreland's testimony established that (1) it is the policy of the APD to tow, inventory, and impound cars when officers arrest drivers, and (2) he followed this procedure in the present case. Specifically, he testified that the APD policy required officers to inventory the contents of a vehicle prior to impoundment, including opening and documenting any items in a vehicle's glove box. Officer Moreland also explained that the policy was designed to protect officer safety as well as valuable items in the car. Moreover, the trial court found this testimony to be credible; specifically, the trial judge found that the vehicle Vaughn was driving should have been towed and that Officer Moreland's search was conducted pursuant to the APD's inventory search policy. In sum, Officer Moreland's testimony—as well as the trial court's own factual findings—demonstrate that the inventory search was conducted in accordance with an established departmental policy with standardized criteria. *See Pineda*, 230 P.3d at 1185–86 (holding an inventory search to be reasonable because the police officer's undisputed testimony established that, after arresting a driver for driving without a driver's license and with altered registration plates, the police officer searched the

car according to the policies and procedures of the police department).

¶17 Lastly, Officer Moreland conducted the search of the car in a permissible manner. Vaughn contends that the search of the vehicle's glove box exceeded the permissible scope of an inventory search. As explained above, however, because the search of the vehicle was conducted pursuant to the APD's inventory search policy—which allows police to take custody of the vehicle upon a driver's arrest and provides standardized criteria in directing officers to search glove boxes and containers—the search here was, by definition, not beyond the scope of a permissible inventory search. *See Bertine*, 479 U.S. at 375, 107 S.Ct. 738 ("'When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between ... glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.'" (quoting *United States v. Ross*, 456 U.S. 798, 821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982))).

¶18 Thus, the inventory search here was proper because Officer Moreland's undisputed testimony established that he (1) had probable cause to arrest Vaughn for driving with a suspended driver's license, (2) had the authority to tow, inventory, and impound the car upon Vaughn's arrest, and (3) acted in an objectively reasonable manner in adhering to the APD's inventory search policy in taking custody of the vehicle and searching the glove box.

### III. Conclusion

¶19 We hold that the trial court erred when it suppressed the drug evidence at issue here, because the evidence was seized as a result of a valid inventory search. Accordingly, we vacate the trial court's suppression order and remand this case to the trial court for further proceedings consistent with this opinion.