COLORADO COURT OF APPEALS
 2015 COA 158
 
 

Court of Appeals No. 14CA0811
Arapahoe County District Court No. 09CR1337
Honorable Elizabeth Beebe Volz, Judge

The People of the State of Colorado,
Plaintiff-Appellee,
v.
Timothy Scott Parks,
Defendant-Appellant.

JUDGMENT AFFIRMED
Division II
Opinion by JUDGE NAVARRO
Dailey and Booras, JJ., concur
Announced November 5, 2015

Cynthia H. Coffman, Attorney General, Victoria M. Cisneros, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee
Martinez Law, LLC, Esteban A. Martinez, Longmont, Colorado, for Defendant-Appellant
 
¶1         Defendant, Timothy Scott Parks, appeals the judgment of conviction entered on jury verdicts finding him guilty of multiple offenses and the trial court’s finding that he is an habitual criminal. He contends that some of his convictions were based on evidence that should have been suppressed at trial because it was obtained in violation of his right, under article II, section 7 of the Colorado Constitution, to be secure from unreasonable searches and seizures. In particular, Parks argues that the Colorado Supreme Court has held that the State Constitution provides greater protection against a vehicle inventory search than the Federal Constitution. We disagree and therefore affirm the judgment.
I. Factual and Procedural History
¶2         In June 2009, a Littleton police officer observed Parks driving a van on a city street and checked the license plate for possible traffic violations. The officer discovered that the license plate had expired in 2008 but displayed a 2009 registration sticker. He stopped the van on suspicion of fictitious license plates. Parks, who was the only occupant of the van, provided a revoked driver’s license and admitted that he did not have insurance or registration for the van. The officer asked Parks to get out of the car and sit on the curb while a second officer conducted an exterior canine sniff of the van, which did not indicate the presence of drugs. The first officer called a towing company to impound the van.
¶3         The officer then inventoried the contents of the van pursuant to Littleton Police Department policy. Behind the driver’s seat, he found and unzipped a soft-sided nylon cooler. Inside, he found nine plastic baggies of methamphetamine, two pipes, a digital scale, a scoop, a spoon, an empty pill bottle, two wiretap detection devices, and a receipt listing a credit card allegedly belonging to Parks. Parks was arrested and ultimately charged with drug and traffic offenses as well as seven habitual criminal counts.
¶4         Before trial, Parks moved to suppress the evidence collected from the inventory search. Evidence presented at a motions hearing showed that the Littleton Police Department’s standard operating procedure for impounded vehicles required officers to inventory the contents of a closed container if access to the container “can be gained without physical damage to the container or the contents.” The trial court ultimately denied Parks’s motions, citing Pineda v. People, 230 P.3d 1181 (Colo. 2010), disapproved of on other grounds by People v. Vaughn, 2014 CO 71, and finding that the police officer had followed a standardized departmental policy in conducting the inventory search and that there was no evidence of bad faith or pretext. The court also explained: “[S]o that there’s no mistake about it, the court’s rulings denying the motions to suppress are based on both a consideration of the U.S. constitution and the Colorado constitution.”
¶5         The evidence gathered from the inventory search was admitted at trial. Parks was convicted of possession with intent to distribute a controlled substance, driving under suspension, failing to provide insurance, displaying fictitious license plates, driving an unregistered vehicle, and six habitual criminal counts. He was sentenced to thirty-two years in prison to be served concurrently with his sixty-four year prison sentence in another case.
II. Vehicle Inventory Search
¶6         Parks contends that the trial court erred by declining to suppress the evidence gathered from the inventory search of the cooler found in his van. Although he concedes that the search did not violate the Fourth Amendment of the United States Constitution, he maintains that the search violated his rights guaranteed by article II, section 7 of the Colorado Constitution. In support, Parks claims that the Colorado Supreme Court in People v. Counterman, 192 Colo. 152, 556 P.2d 481 (1976), held that the State Constitution provides greater protection from inspection of a “nondescript” closed container found during a vehicle inventory search. We are not persuaded.
A. Standard of Review
¶7         A trial court’s ruling on a motion to suppress presents a mixed question of fact and law. People v. Vissarriagas, 2012 CO 48, ¶7, disapproved of on other grounds by People v. Vaughn, 2014 CO 71. We defer to the court’s factual findings if supported by the record, but we review its conclusions of law de novo. Id. In the absence of a clear statement that the trial court relied on the State Constitution, we presume that the court addressed only the Federal Constitution. People v. Inman, 765 P.2d 577, 578-79 (Colo. 1988). Here, however, the trial court clearly stated that it relied on both federal and state constitutional law.
B. Analysis
¶8         Article II, section 7 of the Colorado Constitution declares:
The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.
This provision is substantially similar to the Fourth Amendment to the Federal Constitution.[1] These state and federal constitutional commands “share a common purpose” — “the protection of legitimate expectations of privacy from unreasonable governmental intrusion.” People v. Oates, 698 P.2d 811, 814 (Colo. 1985) (citing Katz v. United States, 389 U.S. 347, 350-52 (1967)).
¶9         As a result, both constitutional provisions require a two-step inquiry: (1) was the governmental intrusion a search? and (2) if so, was it a reasonable search? People v. Hillman, 834 P.2d 1271, 1273 (Colo. 1992). The first inquiry is necessary “because the protections of article II, section 7, do not extend to investigative activity that does not amount to a search or seizure.” Id. “Whether the contested activities constitute a search depends on whether the officer’s ‘actions intruded upon an activity or area in which the defendant held a legitimate expectation of privacy.’” Id. (quoting People v. Weiser, 796 P.2d 982, 984 (Colo. 1990)).
¶10         If the governmental intrusion constitutes a search, constitutional protections come into play, including the warrant and reasonableness requirements. See Oates, 698 P.2d at 814. “The Colorado and U.S. Constitutions are generally coextensive with regard to warrantless searches and seizures.” Eddie’s Leaf Spring Shop & Towing LLC v. Colo. Pub. Utils. Comm’n, 218 P.3d 326, 333 (Colo. 2009) (citing People v. Rodriguez, 945 P.2d 1351, 1358-59 (Colo. 1997)). Under both constitutions, a warrantless search is presumptively unreasonable unless it falls under a specifically established and delineated exception to the warrant requirement. Pineda, 230 P.3d at 1184. One such exception, under both constitutions, “permits officers to conduct an administrative inventory search of a vehicle after that vehicle has lawfully been taken into custody.” Id.
¶11         Parks contends, however, that the Colorado Constitution provides stronger protection than the United States Constitution as to the scope of an inventory search. Relying principally on Counterman, he argues that, unlike the Federal Constitution, the State Constitution forbids the opening of a closed container found during an inventory search, absent indication that its contents are dangerous or particularly valuable and in need of special inventory. Parks emphasizes that we need not decide, as a matter of first impression, whether Colorado constitutional analysis should depart from federal constitutional analysis regarding inventory searches because “such a departure occurred long ago [in Counterman].” Hence, we first consider that case and then examine later cases.
1. Counterman and Its Contemporary Cases
¶12         In Counterman, the defendant’s car was stopped for speeding, and the officer learned that he was wanted on a felony charge. 192 Colo. at 154, 556 P.2d at 482. The officer arrested the defendant, ordered the car towed, and conducted a warrantless inventory search of the car. Id. Inside, the officer found a closed knapsack, untied it, and discovered cocaine. Id.
¶13         The Colorado Supreme Court first recognized that “[t]he owner clearly had an expectation of privacy with regard to his sealed knapsack which was sufficient to invoke constitutional protections against unreasonable police intrusion.” Id. at 154, 556 P.2d at 483. Regarding the reasonableness of the search, the court explained that legitimate purposes of an inventory search include protecting the owner’s property while it is in police custody, insuring against claims of lost or damaged property, and protecting police from any danger posed by the contents of the vehicle. Id. at 157, 556 P.2d at 484. But the court held that the opening of the knapsack violated the United States and Colorado Constitutions because the knapsack was sealed and did not appear dangerous or valuable, and the inventory search could have been accomplished by merely describing the item as a sealed knapsack or giving the defendant the option of a full inventory of its contents. Id. at 157-58, 556 P.2d at 485.
¶14         The Counterman court did not hold, however, that state constitutional analysis departs from federal constitutional analysis as to the scope of an inventory search. On the contrary, the court treated the two constitutions as coextensive in this context and concluded that the search of the knapsack violated both constitutions. Indeed, the court mentioned the State Constitution only twice, both times immediately following citation to the Federal Constitution. Id. at 154, 158, 556 P.2d at 483, 485. Moreover, while the court relied on both state and federal cases to determine the limits of an inventory search, id. at 154-58, 556 P.2d at 483-85, all of the cited cases addressed only the Fourth Amendment to the United States Constitution. See South Dakota v. Opperman, 428 U.S. 364, 372-76 (1976); Cady v. Dombrowski, 413 U.S. 433, 439­48 (1973); Katz, 389 U.S. at 348-59; People v. Roddy, 188 Colo. 55, 59-60, 532 P.2d 958, 960 (1975); People v. Grana, 185 Colo. 126, 130-31, 527 P.2d 543, 545 (1974); People v. Trusty, 183 Colo. 291, 296-97, 516 P.2d 423, 426 (1973).
¶15         Therefore, it is plain that the Counterman court concluded that the search violated the Colorado Constitution because the search violated the United States Constitution. In other words, “[b]ecause the fourth amendment was found to have been violated [in Counterman], article II, section 7, was necessarily found to have been violated as well.” People v. Bertine, 706 P.2d 411, 423 (Colo. 1985) (Bertine I) (Rovira, J., dissenting), rev’d, 479 U.S. 367, 372 (1987) (Bertine II).[2] The Counterman court did not suggest that the State Constitution provides greater protection than the Federal Constitution in the context of inventory searches. See id. (Rovira, J., dissenting) (“[N]othing in Counterman suggested that state and federal constitutional analysis should diverge in the context of inventory searches. The mere citation to article II, section 7, cannot be summarily interpreted as a departure from federal law in the area of an inventory search and seizure.”).
¶16         Parks also relies on three supreme court cases citing Counterman, but none holds that state and federal constitutional analysis diverge with respect to the reasonable scope of an inventory search. See People v. Meeks, 194 Colo. 214, 216-18, 570 P.2d 835, 837-38 (1977) (relying on Counterman to evaluate an inventory search but not citing either the State or Federal Constitution); People v. Rutovic, 193 Colo. 397, 398-99, 566 P.2d 705, 706 (1977) (same); People v. Casias, 193 Colo. 66, 563 P.2d 926, 930 (1977) (citing Counterman for the proposition that a person has a legitimate privacy expectation that attaches to objects in sealed containers).
2. Bertine I, Bertine II, and Inman
¶17         Almost a decade after Counterman, our supreme court applied that case in Bertine I, which presented similar facts. The defendant had been stopped for traffic violations and arrested for driving under the influence. Bertine I, 706 P.2d at 412. An officer impounded the car and conducted a warrantless inventory search pursuant to a standardized departmental policy. Id. at 412-13. The officer unzipped a backpack discovered inside the car; unzipped a nylon bag that was inside the backpack; and then opened four cans that were inside the nylon bag. Id. at 413. Inside the cans, the officer found cocaine, cocaine paraphernalia, cash, and tablets. Id. at 419.
¶18         The trial court found that intervening United States Supreme Court precedent had rejected Counterman’s Fourth Amendment analysis and, therefore, the inventory search of the closed containers did not violate the Federal Constitution. See id. at 413­14, 416. The trial court concluded, however, that the search violated the State Constitution as interpreted in Counterman. See id. On appeal, the Colorado Supreme Court did not endorse the trial court’s view of the State Constitution. Instead, our supreme court declined to decide “whether article II, section 7 of the Colorado Constitution provides citizens of this state with greater protections than the United States Constitution in the area of automobile inventory searches.” Id. at 419. The supreme court found it unnecessary to reach this question because it held that the search violated the Fourth Amendment. Id. (holding that Counterman was dispositive of the Fourth Amendment issue).
¶19         The Bertine I court’s approach is significant because it effectively confirms that Counterman did not hold that state constitutional analysis should depart from federal constitutional analysis in the context of inventory searches. Rather, the court in Bertine I recognized that this was an unresolved question.
¶20         In Bertine II, the United States Supreme Court reversed the Colorado Supreme Court’s holding that the inventory search of the closed containers found in the car violated the Fourth Amendment. The Bertine II Court concluded that a vehicle inventory search conducted pursuant to a standardized departmental policy is reasonable, absent a showing that police acted in bad faith or for the sole purpose of investigation. Bertine II, 479 U.S. at 370-75.
¶21         Shortly thereafter, the Colorado Supreme Court in Inman noted that “under federal constitutional standards Counterman is no longer valid.” 765 P.2d at 579 n.4. The court also noted that it had not yet decided whether the Counterman analysis retained any vitality under the Colorado Constitution. See id. This comment further illustrates that, as of the 1988 Inman decision, our supreme court had not held that the State Constitution provides greater protection than the Federal Constitution as to inventory searches.[3]
¶22         Since the Inman decision, the Colorado Supreme Court has not mentioned Counterman. The court’s later cases reveal, however, that the State and Federal Constitutions are coextensive in the context of inventory searches. We now turn to those decisions.
3. More Recent Decisions Addressing Inventory Searches
¶23         In Pineda, the police lawfully took the defendant’s vehicle into custody and then conducted a warrantless inventory search of the vehicle’s contents. 230 P.3d at 1183-84. Inside the car, an officer discovered a can of deodorant with a removable bottom. After a police dog alerted on the area of the car where the can had been found, the officer opened the can and found bags of heroin. Id. at 1183-84. The evidence adduced at a later hearing established that the police department’s policy required officers to look inside closed containers during an inventory search. Id. at 1184.
¶24         At the outset of its analysis of the inventory search, the Colorado Supreme Court indicated that it was considering both the Federal and State Constitutions:
Pursuant to the United States Constitution and article II, section 7 of the Colorado Constitution, a warrantless search is presumptively unreasonable unless it falls under a specifically established and delineated exception to the warrant requirement. . . . [One such] exception permits officers to conduct an administrative inventory search of a vehicle after that vehicle has lawfully been taken into custody. [Bertine II], 479 U.S. at 374[.]
Id. at 1184 (citations omitted). The court concluded that the inventory search (including the opening of the closed container found in the car) was reasonable because it had been conducted according to a standardized police department policy and there was no showing that the police had acted in bad faith or for the sole purpose of investigation. Id. at 1185-86 (citing Bertine II, 479 U.S. at 373).[4]
¶25         Similarly, in Vissarriagas, ¶¶3-9, our supreme court considered the propriety of a traffic stop and a subsequent vehicle inventory search. The court began its analysis by observing that both the Federal and State Constitutions prohibit unreasonable searches. Id. at ¶9. Relying in part on Pineda, the court then explained that an inventory search is reasonable if it is conducted “in accordance with established policies and procedures” and is not motivated by bad faith (as measured by a standard of “objective reasonableness”). See id. at ¶¶10-13;[5]see also Vaughn, ¶¶10, 14 (noting that both the Federal and State Constitutions prohibit unreasonable searches, and explaining that an “inventory search conducted in accordance with an established, standardized policy is generally considered reasonable in the absence of evidence that the officers conducted a search with impermissible motives” (citing Pineda, 230 P.3d at 1185)).
¶26         The analyses of Pineda, Vissarriagas, and Vaughn demonstrate that the Colorado Supreme Court views the Colorado Constitution as coextensive with the United States Constitution as to the permissible scope of a vehicle inventory search. Of course, we must follow the supreme court’s lead. See, e.g., People v. Gladney, 250 P.3d 762, 768 n.3 (Colo. App. 2010) (“[W]e are bound to follow supreme court precedent.”). Consequently, we hold that the Colorado Constitution does not prohibit the opening and inspection of a closed container found during a vehicle inventory search if the search was conducted in accordance with a standardized departmental policy and there is no showing that the police acted in bad faith or for the sole purpose of investigation.
¶27         In this case, the trial court found, with record support, that the officer’s opening of the cooler found in Parks’s van was authorized by a standardized departmental policy and the officer did not act in bad faith or solely as pretext for investigation. Accordingly, we affirm the court’s denial of the motions to suppress.
III. Colorado’s Habitual Criminal Statutes
¶28         Parks was convicted of six habitual criminal counts. As a result, the trial court imposed a mandatory sentence of four times the maximum of the presumptive sentencing range. See § 18-1.3-801(2)(a)(I)(A), C.R.S. 2015. Parks argues that Colorado’s habitual criminal procedures are unconstitutional. Specifically, and in reliance on Apprendi v. New Jersey, 530 U.S. 466 (2000), he contends that the habitual criminal trial conducted by the trial court (as authorized by section 18-1.3-803, C.R.S. 2015) violated his rights to due process and a jury trial.
¶29         We reject this contention for the reasons articulated in People v. Moore, 226 P.3d 1076, 1089-90 (Colo. App. 2009), and People v. Nunn, 148 P.3d 222, 225-28 (Colo. App. 2006). See also Lopez v. People, 113 P.3d 713, 723 (Colo. 2005) (holding that the prior-conviction exception recognized in Apprendi remains valid).
IV. Conclusion
¶30         The judgment is affirmed.
JUDGE DAILEY and JUDGE BOORAS concur.

[1] The Fourth Amendment provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[2] As we will discuss, the majority in Bertine I did not address this issue.
[3] On a few occasions, the Colorado Supreme Court has “identified a privacy interest deserving of greater protection than that available under the Fourth Amendment.” People v. Rossman, 140 P.3d 172, 176 (Colo. App. 2006) (collecting cases); see Eddie’s Leaf Spring Shop & Towing LLC v. Colo. Pub. Utils. Comm’n, 218 P.3d 326, 333­34 (Colo. 2009) (same). In each case, the court decided that the governmental intrusion constituted a search under the State Constitution even though it did not constitute a search under the Federal Fourth Amendment. See, e.g., People v. Oates, 698 P.2d 811, 818 (Colo. 1985) (search of commercially produced items). None of those decisions held that a search which was reasonable under the Federal Constitution was nonetheless unreasonable under the State Constitution — which is the holding that Parks urges here. And, while the State Constitution requires that a warrant be issued on the basis of probable cause supported by an oath or affirmation reduced to writing, unlike the Federal Constitution, that distinction is not applicable to warrantless searches such as an inventory search. See Eddie’s Leaf Spring Shop, 218 P.3d at 334.
[4] The supreme court explained that, while the use of the police dog “might suggest” the officers suspected that the car contained illegal drugs, “such suspicions do not establish a pretextual motive for arresting Pineda and searching his vehicle.” Pineda v. People, 230 P.3d 1181, 1186 (Colo. 2010). Instead, the evidence showed that “the officers acted in an objectively reasonable manner when they adhered to departmental policies and procedures by . . . conducting an inventory of [the car’s] contents.” Id.
[5] The Vissarriagas court remanded for further findings because the trial court had not fully considered the propriety of the inventory search. 2012 CO 48, ¶14.