Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2018 CO 27**

**No. 16SC922, <u>People v. Brown</u>—Inventory Search—Impoundment.**

The People petitioned for review of the court of appeals' judgment reversing Brown's drug-related conviction on the ground that his motion to suppress should have been granted.  <u>See</u> <u>People v. Brown</u>, 2016 COA 150, __ P.3d __.  The district court found that the contraband in question was discovered during an inventory search of the defendant's vehicle, the conduct of which was within the officers' discretion according to the policies and procedures of the Aurora Police Department, even though they had already decided to issue a summons rather than arrest the defendant for driving with a suspended license.  By contrast, the court of appeals found that in the absence of an arrest, seizing the defendant's vehicle so as to provoke an inventory of its contents could not be justified as an exercise of the police caretaking function, and in the absence of any other recognized exception to the probable cause and warrant requirements of the Fourth Amendment, violated its prohibition against unreasonable searches and seizures.

The supreme court affirms the judgment of the court of appeals because the record fails to demonstrate that seizure of the defendant's vehicle was justified as an

exercise of the police caretaking function or was otherwise reasonable within the meaning of the Fourth Amendment, regardless of local ordinances or police policies and procedures broad enough to grant the officers discretion to impound the vehicle of a driver merely summoned rather than arrested for driving with a suspended license.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 27

### Supreme Court Case No. 16SC922
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA959

#### Petitioner:

The People of the State of Colorado,

v.

#### Respondent:

Carl A. Brown.

### Judgment Affirmed
*en banc*
April 16, 2018

**Attorneys for Petitioner:**
Cynthia H. Coffman, Attorney General
Carmen Moraleda, Assistant Attorney General
 *Denver, Colorado*

**Attorneys for Respondent:**
Douglas K. Wilson, Public Defender
Rachel K. Mercer, Deputy Public Defender
 *Denver, Colorado*

**JUSTICE COATS** delivered the Opinion of the Court.

¶1 The People petitioned for review of the court of appeals' judgment reversing Brown's drug-related conviction on the ground that his motion to suppress should have been granted. See People v. Brown, 2016 COA 150, __ P.3d __. The district court found that the contraband in question was discovered during an inventory search of the defendant's vehicle, the conduct of which was within the officers' discretion according to the policies and procedures of the Aurora Police Department, even though they had already decided to issue a summons rather than arrest the defendant for driving with a suspended license. By contrast, the court of appeals found that in the absence of an arrest, seizing the defendant's vehicle so as to provoke an inventory of its contents could not be justified as an exercise of the police caretaking function, and in the absence of any other recognized exception to the probable cause and warrant requirements of the Fourth Amendment, violated its prohibition against unreasonable searches and seizures.

¶2 Because the record fails to demonstrate that seizure of the defendant's vehicle was justified as an exercise of the police caretaking function or was otherwise reasonable within the meaning of the Fourth Amendment, regardless of local ordinances or police policies and procedures broad enough to grant the officers discretion to impound the vehicle of a driver merely summoned rather than arrested for driving with a suspended license, the judgment of the court of appeals is affirmed.

## I.

¶3 Carl A. Brown was charged with and convicted of possession with intent to distribute a schedule II controlled substance, stemming from the discovery of crack

cocaine during an inventory search of his vehicle. He was sentenced to ten years in the custody of the Colorado Department of Corrections.

¶4 Prior to trial, he moved to suppress the contraband on the ground that the impoundment and inventory search of his vehicle violated the dictates of the Fourth Amendment. Following a hearing of the motion, at which the factual allegations of the stop, search, and arrest were largely undisputed, the district court entered its findings of fact and conclusions of law. As pertinent to the issue before this court, the district court's findings and the uncontested testimony indicated the following.

¶5 Upon receiving an anonymous report of a suspicious person driving a gray BMW in the area, two Aurora police officers observed the defendant's gray BMW fail to stop at a stop sign, pulled him over, and discovered that he was driving on a suspended license. Although the officers decided to issue a summons and release him, pursuant to routine police procedure authorized by an Aurora ordinance, the officers nevertheless decided to impound his vehicle and, while waiting for the towing company, inventoried its contents, discovered a number of bags of crack cocaine, and thereafter arrested him. With regard to the search of the defendant's vehicle, the court concluded that under these circumstances, Aurora police policies and procedures granted the officers the discretion to conduct an inventory search, and for that reason, the search was not pretextual, even if the officers hoped to find evidence of a crime.

¶6 After rejecting the prosecution's assertion of waiver, the court of appeals found that whether the department's inventory procedure had been followed or not, the officers lacked justification for taking the vehicle into government custody in the first

3

place. Reasoning that nothing in the record indicated the defendant could not lawfully provide for the vehicle himself, and thereby prevent it from becoming a public hazard or subjecting the police to liability for the loss of it or its contents, the intermediate appellate court concluded that the public function exception to the probable cause and warrant requirements of the Fourth Amendment had not been met and that compliance with department policies alone did not constitute such an exception. In the absence of proof that the seizure of the vehicle fell within an exception to the Fourth Amendment warrant requirement, the court found that the exclusionary rule required suppression of the discovered items.

¶7     The People petitioned for a writ of certiorari.

## II.

¶8     It is now well-settled that the seizure of vehicles by the police for caretaking purposes, as well as an inventory of the contents of vehicles lawfully in government custody, can amount to reasonable searches and seizures within the meaning of the Fourth Amendment without regard for either probable cause or a warrant. See Colorado v. Bertine, 479 U.S. 367, 371 (1987); South Dakota v. Opperman, 428 U.S. 364, 373–74 (1976); People v. Vaughn, 2014 CO 71, ¶ 14, 334 P.3d 226, 230. As the Supreme Court has observed, the "probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions," as distinguished from criminal investigations. Bertine, 479 U.S. at 371 (quoting Opperman, 428 U.S. at 370 n.5). Rather, it is the purpose of protecting against danger or loss, or even false claims of loss, and the routine or standardized nature of the

4

procedures by which they are carried out, that account for the reasonableness of seizures and subsequent inventory searches conducted in furtherance of so-called "community caretaking functions." Id. at 371, 381.

¶9 Unlike the rationales for and limits of inventory searches of private property lawfully in government custody, the circumstances under which vehicles may become subject to impoundment by the government, implicating subsequent inventory of their contents, without suspicion that they themselves are connected to a crime, has received relatively little attention by the Supreme Court. As early as Cady v. Dombrowski, 413 U.S. 433 (1973), the Court noted that local police frequently engage in "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Id. at 441. However, in addressing a search of the trunk of the car towed from the scene of the accident to a private garage in that case, the Court simply noted, with regard to the seizure of the car itself, that it "had been placed where it was by virtue of lawful police action." Id. at 448. Similarly, in Opperman, in upholding the inventory search of a vehicle impounded for being illegally parked, the Court again simply noted that vehicles are frequently taken into police custody in the interests of public safety and community caretaking functions, and conclusorily found that "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." Opperman, 413 U.S. at 369.

¶10 In Colorado v. Bertine, for the first and only time, the Court addressed a challenge to the inventory search of a defendant's vehicle on the basis of departmental

5

regulations giving the seizing officers discretion to impound the vehicle in the first place. See Bertine, 479 U.S. at 375. In holding that nothing in its applicable case law prohibited the exercise of police discretion, as long as that discretion was exercised according to standard criteria and on the basis of something other than suspicion of criminal activity, and in finding that the seizure of the defendant's vehicle without probable cause in Bertine was not unconstitutional, for the reason that police discretion was exercised in that case in light of standardized criteria related to the feasibility and appropriateness of parking and locking the vehicle rather than impounding it, the Court implied, or simply accepted as inherent in the notion of caretaking functions, that a determination of the constitutionally required reasonableness of seizing a vehicle, just as the reasonableness of inventorying the contents of the vehicle once lawfully seized, is dependent upon standardized criteria limiting police discretion. See id. at 375–76. In doing so, the Court clarified a limitation on, or necessary condition of, the community caretaking exception to the warrant requirement; however, it just as clearly did not create a new exception for every seizure authorized by legislative or departmental standardized criteria, as a result of that authorization alone.

¶11     In rejecting Bertine's challenge to the policy granting police officers the discretion to choose whether to impound, the Court did not uphold the seizure simply because in exercising discretion, the officers complied with department policy, but rather for the reason that the policy reasonably circumscribed the discretion of the individual officers by imposing sufficient limitations on their discretion to use the alternate procedure of parking and locking. Id. at 375–76, 376 n.7. Moreover, with regard to the scope of the

6

inventory search itself, three justices, at least one of whom was required for the Court's majority, joined a concurring opinion underscoring the importance of standardized procedures stripping the inventorying officers of any discretion whatsoever. Id. at 376–77 (Blackmun, J., concurring). While the Court has given meaning to the term "community caretaking functions" largely by referencing examples of non-investigatory, routine administrative activities, rather than by attempting a comprehensive definition, see, e.g., Opperman, 428 U.S. at 368–69 (stating that police may remove vehicles jeopardizing public safety and impeding the efficient movement of traffic), it has nevertheless never implied in any way that searches and seizures conducted according to standardized criteria prescribed by departmental policies are reasonable within the meaning of the Fourth Amendment for that reason alone.

¶12 In a passage heavily relied on by the People, and paraphrased by both this court and the court of appeals on several occasions, we attributed to Bertine the proposition that in the absence of evidence showing that the police acted in bad faith or for the sole purpose of investigation, inventory searches conducted according to police department policies and procedures are generally considered reasonable. See Pineda v. People, 230 P.3d 1181, 1185 (Colo. 2010); see also Vaughn, ¶ 14, 334 P.3d at 230. In addition to the fact that this proposition is clearly a loose paraphrase of Bertine, and that Bertine itself appears to admit of a distinction between standardized policies for the inventory of vehicles already lawfully in police custody and standardized policies for the initial seizure of vehicles, see Bertine, 479 U.S. at 372, 375, we prominently qualified our articulation of the proposition in question with the adverb "generally," and we have

7

never relied on it to justify the lawfulness of a department policy permitting the seizure of private property, as distinguished from the lawfulness of a procedure dictating the scope and manner of inventorying lawfully seized property, cf. Vaughn, ¶ 16, 334 P.3d at 230 (rejecting a challenge to the inventory of glove boxes and containers); Pineda, 230 P.3d at 1185 (rejecting assertion of bad faith). In context, it was clearly never intended to suggest that in the absence of bad faith, every search conducted in compliance with an inventory policy, much less every seizure effected in compliance with an impound policy, must be considered "reasonable" within the meaning of the Fourth Amendment. Cf. United States v. Taylor, 636 F.3d 461, 466 (8th Cir. 2011) ("Moreover, we have rejected the argument that an impoundment is constitutional solely because [police] policy allows towing . . . ."). Rather, the ultimate issue remains whether the impoundment and subsequent inventory serve an administrative community caretaking function.

¶13 Because arresting a person stopped while driving a motor vehicle necessarily deprives him of the immediate custody and control of that vehicle, the question has not infrequently arisen under what circumstances the vehicle may be impounded and subjected to an inventory of its contents. See, e.g., United States v. Sanders, 796 F.3d 1241, 1247–48 (10th Cir. 2015) (collecting and categorizing cases of arrested drivers from the federal circuits); cf. Vaughn, ¶¶ 15–16, 334 P.3d at 230 (upholding seizure and inventory search of vehicle pursuant to department policy following arrest of driver whose license had not only been suspended but who was not even the registered owner of the vehicle). The circumstances considered relevant in these cases have generally

8

included such things as the time and location of the arrest, <u>see, e.g.</u>, <u>United States v. Torres</u>, 828 F.3d 1113, 1120 (9th Cir. 2016) (involving impoundment from an apartment complex not the defendant's); <u>Gombert v. Lynch</u>, 541 F. Supp. 2d 492, 498–99 (D. Conn. 2008) (involving impoundment where driver was to be arrested for such a period of time that vehicle might become a nuisance), proof of ownership of the vehicle, <u>see, e.g.</u>, <u>Vaughn</u>, ¶ 3, 334 P.3d at 228 (involving impoundment where defendant was not the registered owner of the vehicle), and the availability of someone else to take custody with the authorization of the arrestee, <u>see, e.g.</u>, <u>United States v. Velarde</u>, 903 F.2d 1163, 1166–67 (7th Cir. 1990) (involving impoundment where none of the passengers had valid licenses and the owner was not available).  Where the driver is, however, not arrested but merely cited for a driving violation, even for driving under suspension or otherwise without a valid license, which would bar the driver from lawfully driving the vehicle away himself, he will not have been deprived of the custody and control of his vehicle by any government action.

¶14     With regard to a driver who remains in possession and control of his vehicle, it is even more clear than the case of an arrested driver that justifying impoundment as an exercise of a community caretaking function, so as to fall within that exception to the probable cause and warrant requirements of the Fourth Amendment, will be dependent upon the particular circumstances of the seizure in addition to the standardized policy or procedure.  In light of the driver's retained freedom of action, short of reason to believe that he will be unable to make arrangements sufficient to prevent the vehicle from "impeding traffic or threatening public safety and convenience," <u>Opperman</u>, 428

U.S. at 369, or that police action has rendered him unable to protect the vehicle or its contents, even routine policies or procedures providing for impoundment may be insufficient to demonstrate the reasonableness of a seizure in the absence of probable cause of a crime, see United States v. Cervantes, 703 F.3d 1135, 1142 (9th Cir. 2012) ("The fact that an impoundment complies with a state statute or police policy, by itself, is insufficient to justify an impoundment under the community caretaking exception."); 3 Wayne LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 7.3(c) (5th ed. 2017) ("[I]f the driver is only ticketed but cannot himself operate the car because of an expired license, impoundment of the vehicle is improper unless the driver is unable to provide for its custody or removal.") (internal quotation marks omitted).

¶15     The authority of police to act in furtherance of a community caretaking function does not originate from the same source as their authority to investigate criminal activity. Community caretaking is not concerned with potential criminal activity, but rather with administration of the risk to public safety threatened by the vehicle. See Miranda v. City of Cornelius, 429 F.3d 858, 863 (9th Cir. 2005). Although the officers may have reason to suspect that the driver will unlawfully drive the vehicle upon their departure, the community caretaking exception to the probable cause and warrant requirements of the Fourth Amendment definitionally cannot support seizures on the basis of suspicion that the driver has committed, is committing, or will commit a crime. See Opperman, 428 U.S. at 370 n.5; see also Miranda, 429 F.3d at 866 ("[T]he deterrence rationale is incompatible with the principles of the community caretaking doctrine."); United States v. Nickleberry, 164 F. Supp. 3d 1322, 1329 (D. Utah 2016) ("[L]aw

10

enforcement's claim that they were entitled to seize and search [the driver's] car without a warrant in order to prevent any possible future instances of driving without insurance smacks of pretext and is insufficient to overcome the warrant requirement of the Fourth Amendment."); People v. Torres, 188 Cal. App. 4th 775, 792 (2010) (holding that there must be a reason to impound a car other than temporarily depriving the driver of its use); State v. Gonzales, 236 P.3d 834, 840 (Or. Ct. App. 2010) ("[W]e reject the state's suggestion that leaving the car accessible to defendant would have created a threat to public safety.").

### III.

¶16     At the suppression hearing, the prosecution offered no evidence to suggest that any of the factors or purposes for which a community caretaking exception has been recognized supported the impoundment of the defendant's vehicle. There was no suggestion that the car was impeding traffic or threatening public safety and convenience where it was stopped, much less that it was inoperable or otherwise unable to be safely and legally removed by a licensed party, even if that had been the case. Quite the contrary, the prosecution relied entirely on the fact that the vehicle was impounded pursuant to departmental procedure, based on an Aurora ordinance granting police officers the discretion to impound a vehicle being driven by someone whose driver's license had been suspended. To the extent the testimony of the officer who ordered the impoundment reflected any reason other than policy, it suggested only that the defendant was not offered an option to have the car left at the scene or towed because he had already demonstrated that he would drive on a suspended license.

11

¶17 Similarly, before this court, the People rely expressly on the assertion that seizing a vehicle in compliance with policies or procedures permitting as much is sufficient to bring it within an exception to the probable cause and warrant requirements of the Fourth Amendment. Alternatively they assert that impoundment of the vehicle of someone driving on a suspended license necessarily falls within the purposes of police caretaking functions by preventing a presumptively unsafe driver from endangering the public. Because we have rejected both of these rationales and the People assert no other exception to the Fourth Amendment probable cause requirement, we must conclude that the impoundment of the defendant's vehicle in this case and, therefore, its subsequent inventory violated the Fourth Amendment prohibition against unreasonable searches and seizures.

## IV.

¶18 Because the record fails to demonstrate that seizure of the defendant's vehicle was justified as an exercise of the police caretaking function or was otherwise reasonable within the meaning of the Fourth Amendment, regardless of local ordinances or police policies and procedures broad enough to grant the officers discretion to impound the vehicle of a driver merely summoned rather than arrested for driving with a suspended license, the judgment of the court of appeals is affirmed.