Filed 3/19/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H053314 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C2206478) |
| v. | |
| ERIC JAIME PEREZ, | |
| Defendant and Appellant. | |

In this appeal, we examine the application of the Fourth Amendment's community caretaking doctrine to vehicle impoundment. We consider whether a police officer's decision to impound a driver's vehicle pursuant to the Vehicle Code solely to prevent further illegal driving satisfies the community caretaking function. We decide that it does not.

Defendant Eric Jaime Perez pleaded no contest to possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)) and possession of a controlled substance for sale (Health & Saf. Code, § 11378). The police found drugs in Perez's vehicle during an impoundment and inventory search following a traffic stop. The police also found a firearm and more drugs when later executing a search warrant on a hotel room linked to Perez.

Prior to entering his no contest pleas, Perez moved to suppress the evidence found in the inventory and hotel room searches as the fruits of an

illegal seizure. A magistrate denied Perez's motion and held him to answer. The trial court likewise denied Perez's renewed suppression motion.

On appeal, Perez claims the magistrate erred under the Fourth Amendment in denying his motion to suppress evidence. He asserts that the impoundment of his vehicle was unlawful because the impoundment did not serve a community caretaking function. He further contends that the opening of a closed container inside his vehicle was unlawful because there was no evidence of a specific standardized police procedure for opening closed containers during an inventory search.

For the reasons explained below, we agree the prosecution failed to show the police reasonably impounded Perez's vehicle pursuant to their community caretaking function. Therefore, the seizure of the vehicle and resulting inventory search violated the Fourth Amendment. We reverse the judgment and remand with directions for the trial court to permit Perez to withdraw his no contest pleas; if he does so, the court shall vacate its denial of Perez's motion to suppress evidence, grant the motion, and conduct further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Procedural Background*

In May 2022, the Santa Clara County District Attorney filed a felony complaint charging Perez with possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count 1), possession of ammunition by a prohibited person (Pen. Code, § 30305, subd. (a)(1); count 2), possession of a controlled substance for sale (Health & Saf. Code, § 11378; count 3), transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a); count 4), misdemeanor driving in violation of a license restriction related to a driving

under the influence offense (Veh. Code,[1] § 14601.2, subd. (b); count 5), and misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364, subd. (a); count 6). As to count 3, the complaint alleged that Perez was armed with a firearm in the commission of the offense (Pen. Code, § 12022, subd. (c)) and had suffered two prior convictions for drug possession (Pen. Code, § 1203.07, subd. (a)(11)).

In September 2022, Perez, through counsel, filed a motion to suppress evidence pursuant to Penal Code section 1538.5 (hereafter, suppression motion or motion).

The district attorney filed an opposition to Perez's suppression motion. The district attorney asserted, inter alia, that the police had reasonable suspicion to stop Perez's vehicle, had probable cause to arrest Perez for driving with a suspended license, lawfully decided to impound Perez's vehicle and conduct an inventory search, and lawfully seized items pursuant to a warrant from a hotel room linked to Perez.

In October 2022, a magistrate concurrently heard evidence pertaining to the preliminary hearing and the suppression motion (hereafter, combined hearing). The magistrate denied Perez's suppression motion and held Perez to answer.

In November 2022, the district attorney filed an information charging Perez with the same counts and attendant allegations set forth in the felony complaint. Additionally, the information alleged several aggravating factors for sentencing. (Cal. Rules of Court, rule 4.421(a)(2) [counts 3–4], (b)(3) [counts 1–6]; Pen. Code, § 1170, subd. (b).)

---

[1] All further unspecified statutory references are to the Vehicle Code.

3

Perez filed a motion to set aside the information under Penal Code section 995 and renewed his suppression motion (renewed suppression motion) (Pen. Code, § 1538.5, subd. (i)). The district attorney opposed Perez's motions.

In January 2023, the trial court considered the record of the combined hearing, as well as the written and oral arguments of the parties, and denied Perez's motions.

On August 21, 2024, pursuant to a negotiated plea agreement, Perez pleaded no contest on count 1 (possession of a firearm by a felon) and count 3 (possession of a controlled substance for sale), in exchange for two years of formal probation and one year of electronic monitoring. Perez admitted the aggravating factor attached to count 1 (Cal. Rules of Court, rule 4.421(b)(3)). Upon the district attorney's motion, the trial court dismissed the information's remaining counts and allegations.

On May 6, 2025, the trial court suspended imposition of sentence and placed Perez on two years of formal probation with terms and conditions.

Perez filed a notice of appeal based on the sentence or other postplea matters and the denial of his suppression motion.

B. *Background on the Searches and Seizures and Perez's Suppression Motion*

1. Hearing Evidence on the Traffic Stop, Impoundment, Inventory Search, and Hotel Room Search

The evidence presented at the combined hearing demonstrated the following concerning the traffic stop, impoundment, searches, and seizures:

Around 2:00 p.m. on May 26, 2022, Milpitas Police Department Officer Eric Bernardo observed Perez's minivan exiting a gas station. Officer Bernardo effected a traffic stop on the minivan because Perez drove across a

4

sidewalk that traverses a driveway without stopping, in violation of the Milpitas Municipal Code. Perez eventually pulled over to the side of the road (near a hotel) on South Main Street in Milpitas.[2] According to Bernardo, Perez parked his minivan legally, and it was not blocking traffic.

Perez told Officer Bernardo that he (Perez) did not have his driver's license and believed it had been "revoked." Bernardo conducted a records check and learned that Perez's license had been suspended since 1993.[3] Bernardo asked Perez several times to exit his minivan, but Perez refused. After a few minutes, Perez got out of the minivan. Bernardo handcuffed Perez and escorted him to the sidewalk, leaving Perez with another officer, Karoly Toth.

Officer Bernardo told Perez that officers were going to search the minivan because it was going to be towed and impounded "pursuant to [Perez] driving on a suspended license." Bernardo testified that he intended to cite Perez for violating section 14601 (i.e., a prohibition on driving when one's license is suspended or revoked) and release Perez without taking him into custody.

In accord with his statement to Perez during the traffic stop, Officer Bernardo testified that he decided to impound Perez's minivan because "Perez was driving on a suspended license." Bernardo explained that it is generally his practice to impound a vehicle when the driver has a suspended or revoked license. Bernardo added, "That is what the law allows for, and as,

---

[2] The appellate record indicates that Perez had addresses in Milpitas and San Jose.

[3] According to a certified DMV printout (which was entered into evidence at the combined hearing), Perez's driver's license had been revoked in April 1993, under former section 13352, subdivision (a)(5), for " 'DUI or drugs' " (capitalization omitted).

you know, part of them driving on a suspended license, just my common practice is to impound the vehicles, except for certain extenuating circumstances and certain, various suspension authorities that don't allow for that." When citing and releasing a person for driving on a suspended or revoked license, Bernardo's concern "would be that they go right back in the vehicle and continue to drive."

According to Officer Bernardo, the Milpitas Police Department did not have a policy specifically relating to impoundment when the driver is driving on a suspended or revoked license. When asked (on cross-examination) if there was a department policy instructing officers to impound a vehicle in every case of a driver with a suspended license, Bernardo responded, "There is no should, shall, may policy in place for that." Bernardo stated that his decision to impound Perez's vehicle was made pursuant to his own "personal practice when drivers have a suspended license."

Regarding an inventory search following impoundment, Officer Bernardo testified, "Per Milpitas Police policy, when we're going to impound a vehicle, it needs to be inventoried, searched to document any items inside the correct vehicle in order to mitigate any possibility for lost or stolen items." Bernardo explained that when he conducts an inventory search, he typically looks for valuable items or weapons, such as cell phones and guns. He also looks for items that the police may be able to release prior to towing the vehicle away to mitigate the hardship on the person being cited. Bernardo further explained that an inventory search ensures the vehicle is safe and free of weapons, so employees of the impounding company are not in danger when the vehicle is eventually picked up by the owner or in the event someone tries to enter the vehicle to retrieve an item.

During the inventory search of Perez's minivan, Officer Bernardo found an open plastic shopping bag situated between the driver's seat and front passenger's seat. The shopping bag held several smaller containers, including a black storage container (hereafter, storage container or container) that Bernardo described as a "small kind of box." Bernardo could not recall whether the container was "zippered or latched or [had] anything securing the top." The container held two bags of a white crystalline substance and two small glass jars containing a pink and a white powdery substance. The container also held credit cards bearing Perez's name and approximately $300 in cash. Other items found inside the shopping bag included a cigarette box containing a small plastic bindle of suspected methamphetamine, an eyeglass case containing $600 in cash, two bags of suspected marijuana, a digital scale, and a cell phone.

Later, Officer Bernardo packaged the substances he found in Perez's minivan and sent them to the crime lab for analysis. A criminalist told Bernardo that testing of the substances revealed the presence of methamphetamine and fentanyl. Based on the amount of narcotics, their packaging, and the presence of cash, a digital scale, and a cell phone, Bernardo opined that Perez possessed the methamphetamine for sale.

On cross-examination by Perez's defense counsel, Officer Bernardo testified that Perez did not consent to the police search of his minivan. Bernardo further confirmed that the windshield and doors of Perez's minivan were intact; Bernardo never asked Perez if he wanted to call someone to move the vehicle; and Bernardo did not see within the minivan any electronics or other items of high value in plain sight.

When the magistrate asked Officer Bernardo why he decided to tow the minivan instead of leaving it legally parked on the street, Bernardo

responded, "Well, typically when I stop somebody with a suspended license, I tow their vehicle, especially in this case since his license has been suspended since 1993. . . . [Perez] said he believed [his license] was revoked. [¶] In my opinion, that meant [Perez] knew there was something going on with his license, that he should not be driving. And due to the almost 30 years of that status, he had had ample time to correct whatever needed to be corrected and had obviously been driving anyway. [¶] So, it was my intent to impound his vehicle."

Officer Bernardo later testified, "part of the Vehicle Code for [section] 14601 indicates that you can tow their vehicle for being in violation of that section. [¶] In my eight years [as a police officer], I want to say probably 97 percent of the time I tow the vehicle, because there is a likelihood of recurrence of them driving the vehicle when they're not supposed to be. And it usually comes with an automatic 30-day impound depending on the different section that they are suspended for under the authority. [¶] And that then, you know, should -- is supposed to hasten their actions to fix whatever they're supposed to be doing to get their license back into valid status. [¶] Like I say, the fact that Mr. Perez has been suspended for almost 30 years and didn't seem to have made any effort to fix that status, and had been clearly driving the vehicle against those violations that he knew about, I thought it was only appropriate to impound his vehicle, because if released, which is typical with a suspended driver, they get cited and released at the scene. He would more than likely get back into the vehicle and continue to drive it."

In response to a follow-up question by the prosecutor, Officer Bernardo added that if a person he cited and released for driving on a suspended license was observed later that day driving, Bernardo would "feel like [he]

8

didn't do [his] job properly, especially if they were to be involved in some kind of accident or somebody was hurt; something to that effect."

Officer Toth testified that following the search of Perez's minivan, Toth reviewed the nearby hotel's surveillance camera footage. Toth confirmed that Perez's vehicle had been at the hotel earlier in the day and Perez had walked out of one of the hotel's rooms. Toth obtained and executed a search warrant for the hotel room linked to Perez "based on the findings, whatever Officer Bernardo found in the vehicle." Inside the hotel room, officers found a loaded semiautomatic firearm, suspected methamphetamine, and a pipe typically used to smoke methamphetamine. The gun was registered to someone else. The items seized in the hotel room bolstered Officer Bernardo's opinion that Perez possessed narcotics for sale.

### 2. Magistrate's Ruling on Perez's Suppression Motion

The magistrate denied Perez's suppression motion stating: "So the court has spent some time looking over the cases each of you cited and I do believe that based on the evidence presented here, the officer made a car stop based on a municipal code violation that he observed [Perez] do in terms of not stopping before crossing the sidewalk driveway, and then turning onto the street. [¶] [Officer Bernardo] did testify that when he learned that [Perez] was driving on a suspended driver's license, and that it had been suspended for many years, his intent was to impound the vehicle, which he was allowed to do. And then pursuant to the impound, he did the inventory search. [¶] So the court will deny the suppression motion at this time."[4]

---

[4] As noted *ante* (see pt. I.A.), after the magistrate held Perez to answer, a different bench officer denied Perez's renewed suppression motion based on the record of the combined hearing.

9

## II. DISCUSSION

Perez contends the prosecution failed to meet its burden of demonstrating the reasonableness of the challenged search and asserts the evidence fails to support application of the community caretaking exception. He asserts a "community caretaking function must be a standardized, non-discretionary procedure," and the Milpitas Police Department lacked a policy guiding the decision to impound, which cannot be supplied by the Vehicle Code. Perez additionally contends the prosecution failed to put on any evidence to show that opening a closed container during an inventory search is covered by the applicable Milpitas Police Department policy.[5]

The Attorney General responds that the decision to impound the minivan was authorized by the Vehicle Code and "served a community caretaking function to protect the public from the danger posed by [Perez]'s ongoing unlicensed driving. The officer's search of the closed container was also guided by the departmental policy for inventory searches." The Attorney General contends that the impoundment authority provided by the relevant statutes and departmental policy need not be mandatory, and public safety is a recognized community caretaking rationale. The Attorney General asserts that the decision to impound was not solely to prevent a future crime but also to protect the public from Perez's driving on a suspended license, which he had done for 29 years. The Attorney General also notes there is no evidence of any pretext or ruse to search Perez's vehicle.

---

[5] Perez alternatively claims that his defense counsel provided ineffective assistance in challenging the opening of the closed storage container. The Attorney General, however, does not assert forfeiture regarding Perez's appellate challenge to that action, conceding that "the issue appears to have been adequately raised below."

10

A. *Standard of Review*

"When a suppression motion is made before a magistrate in conjunction with a preliminary hearing, as in this case, the magistrate tries the facts, resolving credibility issues and conflicts in the evidence, weighing the evidence, and drawing appropriate inferences. [Citations.] If the magistrate denies the motion and holds the defendant to answer, the defendant must, as a prerequisite to appellate review, renew his challenge before the trial court by motion to dismiss under [Penal Code] section 995 or in a special hearing. [Citations.] At that stage, the evidence is generally limited to the transcript of the preliminary hearing, testimony by witnesses who testified at the preliminary hearing (who may be recalled by the prosecution), and evidence that could not reasonably have been presented at the preliminary hearing." (*People v. Romeo* (2015) 240 Cal.App.4th 931, 941 (*Romeo*).)

On appeal, we too "are 'concerned solely with the findings of the [magistrate].' [Citation.] After submission on the transcript at the special hearing, the appellate court, like the superior court, is bound by the magistrate's factual findings so long as they are supported by substantial evidence. [Citations.] On review of the superior court ruling by appeal or writ, a two-step standard of review applies. In the first step of our review, 'we in effect disregard the ruling of the superior court and directly review the determination of the magistrate.' [Citation.] At this stage, we consider the record in the light most favorable to the People since 'all factual conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion.' " (*Romeo, supra*, 240 Cal.App.4th at p. 941.)

In the second step, "[a]ccepting as established all implied or express factual findings by the magistrate as are supported by substantial evidence,

we then proceed to measure those findings against Fourth Amendment standards articulated by the United States Supreme Court. [Citation.] At this stage, we independently apply the law to the factual findings [citations], determining de novo whether the factual record supports the magistrate's conclusion that the challenged search met the constitutional standard of reasonableness." (*Romeo*, *supra*, 240 Cal.App.4th at pp. 941–942; see also *People v. McWilliams* (2023) 14 Cal.5th 429, 437, fn. 2 [explaining that "under the so-called truth-in-evidence provision of the state Constitution, ' "issues relating to the suppression of evidence derived from governmental searches and seizures are reviewed under federal constitutional standards" ' "].)

We may affirm the suppression ruling if it is correct on any theory, even if the court's reasoning was incorrect. (*People v. Hall* (2020) 57 Cal.App.5th 946, 952.)

B. *Legal Principles*

The Fourth Amendment to the United States Constitution guarantees individuals the "right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." (*Miranda v. City of Cornelius* (9th Cir. 2005) 429 F.3d 858, 862 (*Miranda*); see also § 22650, subd. (b).)

A warrantless search or seizure is presumed unconstitutional, and the government bears the burden of establishing that its action fell within an exception to the warrant requirement. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1156; see also *People v. Johnson* (2006) 38 Cal.4th 717, 723.)

One such exception is the "community caretaking" function, which allows police officers to "impound vehicles that 'jeopardize public safety and

12

the efficient movement of vehicular traffic.' " (*Miranda, supra*, 429 F.3d at p. 864, quoting *South Dakota* v. *Opperman* (1976) 428 U.S. 364, 369 (*Opperman*).)

In *Opperman*, the United States Supreme Court explained the community caretaking function as follows:  "In the interests of public safety and as part of what the Court has called 'community caretaking functions, [citation], automobiles are frequently taken into police custody.  Vehicle accidents present one such occasion.  To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities.  Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic.  The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." (*Opperman, supra*, 428 U.S. at pp. 368–369, fn. omitted, citing *Cady v. Dombrowski* (1973) 413 U.S. 433, 441.)

Relatedly, "[i]nventory searches are a well-defined exception to the Fourth Amendment's warrant requirement.  [Citation.]  When a vehicle is impounded or otherwise in lawful police custody, an officer may conduct a warrantless search aimed at securing or protecting the vehicle and its contents." (*People v. Lee* (2019) 40 Cal.App.5th 853, 867 (*Lee*), citing *Colorado v. Bertine* (1987) 479 U.S. 367, 371 (*Bertine*) & *Opperman, supra*, 428 U.S. at p. 373.)

"To determine whether a warrantless search is properly characterized as an inventory search, 'we focus on the purpose of the impound rather than

the purpose of the inventory.' [Citation.] 'The decision to impound the vehicle must be justified by a community caretaking function "other than suspicion of evidence of criminal activity" [citation] because inventory searches are "conducted in the absence of probable cause" [citation].' [Citation.] For example, impounding serves a community caretaking function when a vehicle is parked illegally, blocks traffic or passage, or stands at risk of theft or vandalism. [Citations.] Also relevant to the caretaking inquiry is whether someone other than the defendant could remove the car to a safe location." (*Lee*, *supra*, 40 Cal.App.5th at p. 867.) The lack of valid vehicle registration may also provide reason to impound a vehicle. (*Halajian v. D & B Towing* (2012) 209 Cal.App.4th 1, 16.)

"Although a police officer is not required to adopt the least intrusive course of action in deciding whether to impound and search a car [citation], the action taken must nonetheless be reasonable in light of the justification for the impound and inventory exception to the search warrant requirement. Reasonableness is 'the touchstone of the Fourth Amendment.' "[6] (*People v. Williams* (2006) 145 Cal.App.4th 756, 761–762 (*Williams*).) "The question is 'whether a decision to impound or remove a vehicle . . . was reasonable under all the circumstances.' " (*People v. Duong* (2020) 10 Cal.5th 36, 52.)

---

[6] Section 22650, subdivision (b) similarly provides: "Any removal of a vehicle is a seizure under the Fourth Amendment of the Constitution of the United States and [s]ection 13 of [a]rticle I of the California Constitution, and shall be reasonable and subject to the limits set forth in Fourth Amendment jurisprudence. A removal pursuant to an authority, including, but not limited to, as provided in [s]ection 22651, that is based on community caretaking, is only reasonable if the removal is necessary to achieve the community caretaking need, such as ensuring the safe flow of traffic or protecting property from theft or vandalism." (Stats. 2018, ch. 592, § 1, adding § 22650, subd. (b), eff. Jan. 1, 2019.)

"The absence of a proper community caretaking function suggests an impound is a pretext to investigate without probable cause, a purpose which is inconsistent with an inventory search.  [Citation.]  Officers may not use an inventory search as 'a ruse for a general rummaging in order to discover incriminating evidence.'  [Citation.]  Unlike the probable cause determination, which rests solely on an objective standard, the inventory search exception evaluates both the objective reasonableness of the impound decision and the subjective intent of the impounding officer to determine whether the decision to impound was 'motivated by an improper investigatory purpose.'  [Citation.]  Such purpose renders a decision to impound and the subsequent inventory search unlawful under the Fourth Amendment."  (*Lee*, *supra*, 40 Cal.App.5th at p. 867.)

The Vehicle Code authorizes the police to impound a vehicle under certain circumstances when a person with a suspended or revoked license has been driving it.  Under section 22651, subdivision (p), the police may impound a vehicle located within their territorial limits "*[i]f the peace officer issues the driver of a vehicle a notice to appear for a violation* of [s]ection 12500, 14601, 14601.1, 14601.2, 14601.3, 14601.4, 14601.5, or 14604, and the vehicle is not impounded pursuant to [s]ection 22655.5" (which governs impoundment based on probable cause in particular circumstances not relevant here).  (Italics added.)

"The obvious purpose of subdivision (p) of section 22651 is to prevent the offender who is cited on a public street for driving without a valid license from reoffending when the officer has completed the citation process and departed."  (*People v. Auer* (1991) 1 Cal.App.4th 1664, 1669, disapproved on other grounds by *People v. Williams* (1999) 20 Cal.4th 119, 125.)  In *People v. Green* (1996) 46 Cal.App.4th 367 (*Green*), the Court of Appeal concluded that

"section 22651, subdivision (p), provided the required standard impound procedures." (*Id.* at p. 375.)

Section 14602.6, subdivision (a)(1) similarly provides for impoundment when a person is found driving on a suspended or revoked license: "Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, driving a vehicle while his or her driving privilege is restricted pursuant to [s]ection 13352 or 23575 and the vehicle is not equipped with a functioning, certified interlock device, or driving a vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person . . .. A vehicle so impounded shall be impounded for 30 days."[7]

"If officers are warranted in impounding a vehicle, a warrantless inventory search of the vehicle pursuant to a standardized procedure is constitutionally reasonable." (*Williams, supra,* 145 Cal.App.4th at p. 761, citing *Opperman, supra,* 428 U.S. at p. 372.) Nevertheless, "[b]ecause of the

---

[7] Although not dispositive of our legal conclusion, section 14602.6 (as compared to section 22651, subdivision (p)) does not appear to apply on these facts. A "violation of section 14602.6 occurs when officers impound a vehicle *when the driver has not been arrested* and the vehicle has not been involved in an accident." (*Thompson v. City of Petaluma* (2014) 231 Cal.App.4th 101, 110, italics added [citing 95 Ops.Cal.Atty.Gen. 1, 2 (2012) *United States v. Cervantes* (9th Cir. 2012) 703 F.3d 1135, 1142–1143].) In the instant matter, Officer Bernardo testified that after he learned Perez did not have a valid driver's license, Bernardo asked Perez to exit the vehicle, handcuffed him, and intended to cite Perez and release him, rather than arrest him. There was no evidence that Bernardo arrested Perez for violating section 14601 et seq. prior to conducting the impoundment and inventory search.

16

risk that an inventory search will be 'a ruse for a general rummaging,' . . ., a valid inventory search must adhere to a preexisting policy or practice." (*People v. Williams*, *supra*, 20 Cal.4th at p. 138, citing *Florida v. Wells* (1990) 495 U.S. 1, 4–5.)

In *Bertine*, the United States Supreme Court concluded that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." (*Bertine*, *supra*, 479 U.S. at p. 374.) In addition, the Supreme Court rejected defendant Bertine's argument that "the inventory search of his van was unconstitutional because departmental regulations gave the police officers discretion to choose between impounding his van and parking and locking it in a public parking place." (*Id.* at p. 375.) The Court explained that "[n]othing in *Opperman* or [*Illinois v. Lafayette* (1983) 462 U.S. 640] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." (*Ibid.*)

C. *Analysis*

As an initial matter, we agree with the Attorney General that the record supports an implied finding that Officer Bernardo's decision to impound Perez's minivan upon learning that Perez did not have a valid driver's license was not based on an investigative motive or a pretext to conduct an investigatory search of the vehicle. We also agree with the Attorney General that Bernardo's decision to impound the minivan under the Vehicle Code amounts to a permissible exercise of discretion based on requisite standardized criteria within the meaning of *Bertine*. (See *Green*, *supra*, 46 Cal.App.4th at pp. 372–373, 375; *People v. Benites* (1992) 9

17

Cal.App.4th 309, 327–328; *People v. Steeley* (1989) 210 Cal.App.3d 887, 892; *People v. Burch* (1986) 188 Cal.App.3d 172, 176; see also *Bertine, supra,* 479 U.S. at pp. 375–376.)

Statutory authorization, however "does not, in and of itself, determine the constitutional reasonableness of the seizure." (*Williams, supra,* 145 Cal.App.4th at p. 762; see also *Lee, supra,* 40 Cal.App.5th at p. 869; accord *People v. Brown* (Colo. 2018) 415 P.3d 815, 819–820 (*Brown*).) The prosecution bears the further burden to show that an impoundment is constitutionally reasonable under the circumstances. In other words, notwithstanding general statutory authorization for impoundment, the prosecution must show that the removal of a vehicle from the street is specifically justified by a community caretaking function based on the facts surrounding the vehicle itself. (See *Williams,* at p. 762; see also *People v. Shafrir* (2010) 183 Cal.App.4th 1238, 1247–1248.)

As explained further below, we decide the prosecution did not carry this additional burden. While the record supports Officer Bernardo's concerns about Perez as a driver, the record shows no facts specific to Perez's *vehicle* supporting application of the community caretaking function. Officer Bernardo's desire to protect public safety by impounding the minivan to prevent Perez from unlawful driving without more does not satisfy the community caretaking function.

The Court of Appeal in *Williams* addressed a circumstance akin to the instant case. In *Williams,* the police officer's impoundment decision was proper under the Vehicle Code (see § 22651, subd. (h)(1) [authorizing impoundment of a vehicle that was driven by an arrestee who is taken into custody]) (*Williams, supra,* 145 Cal.App.4th at pp. 759–760) and the officer "almost always impounded the cars of drivers he arrested." (*Id.* at p. 763.)

Other than the statutory authorization, the officer did not "assert any community caretaking justification for the impoundment." (*Ibid*.) The evidence in *Williams* demonstrated that the defendant had a valid driver's license; the defendant's car was properly registered to a car rental company, had not been reported stolen, and was legally parked at the curb in front of defendant's home; and there was no enhanced possibility that the car would be stolen, broken into, or vandalized. (*Id*. at p. 762.)

The *Williams* court concluded that the prosecution had failed to establish the constitutional reasonableness of the impoundment because it "did not establish that impounding [defendant]'s car served any community caretaking function." (*Williams*, *supra*, 145 Cal.App.4th at p. 763.) Furthermore, the *Williams* court rejected the People's argument—which cited *Bertine*—that the impoundment was permissible because it was conducted pursuant to the Vehicle Code. The court explained that "*Bertine* did not abandon the community caretaking function rationale of *Opperman*." (*Ibid*.) The *Williams* court added, "Clearly, *Bertine* does not validate any impoundment that falls within Vehicle Code section 22651. The impoundment must still serve a community caretaking function. At best, the statute may constitute a standardized policy guiding officers' discretion. It does not, however, end the inquiry." (*Ibid*.)

That Perez had a suspended or revoked license without more does not qualify impoundment of his vehicle as a community caretaking function. In *Blakes v. Superior Court* (2021) 72 Cal.App.5th 904, the Court of Appeal stated that a police practice/policy "to tow when the driver had a suspended license to prevent more driving under a suspended license . . . does not provide a community caretaking function for the tow." (*Id*. at p. 914; accord *Brown*, *supra*, 415 P.3d at p. 820 ["Although the officers may have reason to

19

suspect that the driver will unlawfully drive the vehicle upon their departure, the community caretaking exception . . . definitionally cannot support seizures on the basis of suspicion that the driver has committed, is committing, or will commit a crime."].)

As another Court of Appeal has explained, "Federal cases underscore the impounding of a vehicle driven by an unlicensed driver must be supported by some community caretaking function other than temporarily depriving the driver of the use of the vehicle." (*People v. Torres* (2010) 188 Cal.App.4th 775, 792 [discussing *United States v. Caseres* (9th Cir. 2008) 533 F.3d 1064, 1075 & *Miranda, supra*, 429 F.3d at p. 866].) As the Ninth Circuit Court of Appeals stated in *Miranda*, at page 866, "The need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale."

The Court of Appeal in *Coalition on Homelessness v. City and County of San Francisco* (2023) 93 Cal.App.5th 928 (*Coalition*) similarly observed that "numerous cases have emphasized that tows under the caretaking exception must address some present need of safety or convenience. And *Miranda* and its progeny have expressly rejected the argument that deterring future misconduct can justify a tow under the exception, because that justification would not address a present need based on the location of the towed vehicle." (*Id.* at p. 945; see also *id.* at pp. 941–942.) The *Coalition* court further noted that "the vehicular community caretaking exception has been held *not* to justify the tow of a legally and securely parked car following the arrest of an unlicensed driver [citations], or following the arrest of a driver on an outstanding warrant." (*Id.* at p. 943 [citing *Cervantes, Caseres* & *Williams*].)

Courts of other states have reached a similar conclusion. In *Brown*, the Supreme Court of Colorado considered a circumstance in which police officers

stopped a driver for failing to obey a traffic sign, discovered he was driving on a suspended license, and decided to issue a summons and release the driver. (*Brown*, *supra*, 415 P.3d at p. 817.)  The officers "decided to impound his vehicle and, while waiting for the towing company, inventoried its contents, discovered a number of bags of crack cocaine, and thereafter arrested [the driver]." (*Ibid.*)

At the suppression hearing, "the prosecution relied entirely on the fact that the vehicle was impounded pursuant to departmental procedure, based on [a city] ordinance granting police officers the discretion to impound a vehicle being driven by someone whose driver's license had been suspended. To the extent the testimony of the officer who ordered the impoundment reflected any reason other than policy, it suggested only that the defendant was not offered an option to have the car left at the scene or towed because he had already demonstrated that he would drive on a suspended license." (*Brown*, *supra*, 415 P.3d at pp. 820–821.)  Further, while the court agreed the search was not pretextual (*id*. at p. 817), "[t]here was no suggestion that the car was impeding traffic or threatening public safety and convenience where it was stopped, much less that it was inoperable or otherwise unable to be safely and legally removed by a licensed party, even if that had been the case." (*Id*. at p.  820.)

The Colorado Supreme Court concluded on these facts that the inventory search violated the Fourth Amendment.  (*Brown*, *supra*, 415 P.3d at p. 821.)  It rejected the People's rationale "that impoundment of the vehicle of someone driving on a suspended license necessarily falls within the purposes of police caretaking functions by preventing a presumptively unsafe driver from endangering the public." (*Ibid.*)  The Colorado Supreme Court held that the record failed to demonstrate that seizure of the car "was

21

justified as an exercise of the police caretaking function or was otherwise reasonable within the meaning of the Fourth Amendment, regardless of local ordinances or police policies and procedures broad enough to grant the officers discretion to impound the vehicle of a driver merely summoned rather than arrested for driving with a suspended license." (*Ibid.*; see also *Hicks v. State* (Md. Ct. Spec. App. 2025) 348 A.3d 565, 580 [concluding the impoundment did not serve a community caretaking function where the detective decided to impound the vehicle "to teach the appellant a lesson and deter him from driving on a suspended license"].)

As detailed *ante* (pt. I.B.1.), Officer Bernardo testified that Perez's minivan was legally parked on a city street and was not blocking traffic. Bernardo also testified that the windshield and doors of the minivan were intact, and he did not see any high value items in plain sight inside the vehicle. Further, the prosecution did not present any evidence that the minivan was parked in a high crime area or unregistered or that there was reason to believe Perez (who apparently maintained addresses in Milpitas and San Jose) would be unable to arrange for legal transport of the minivan. Given these circumstances, it does not matter here that no other person was present or immediately available to "remove the car to a safe location." (*Lee, supra,* 40 Cal.App.5th at p. 867.) The prosecution elicited no evidence of any need to move the minivan from where it was parked on the street in Milpitas.

Even though Officer Bernardo was not required to use "the least intrusive course of action in deciding whether to impound" Perez's minivan (*Williams, supra,* 145 Cal.App.4th at p. 761), Bernardo could have deterred Perez from readily returning to his vehicle and driving illegally by arresting Perez for violating section 14601.2. (See *People v. Armstrong* (1991) 232 Cal.App.3d 228, 232, fn. 2 ["Driving with a suspended license is a

misdemeanor justifying a full custodial arrest."]; § 40303, subds. (a), (b)(10).) Bernardo also could have attempted to arrange for police to observe Perez's parked minivan and, perhaps, eventually tow the vehicle if abandoned. (See §§ 22660, 22669, subd. (a); Milpitas Mun. Code, § XI-13-5.04; see also *Coalition*, *supra*, 93 Cal.App.5th at p. 942, fn. 10.)

In the hearing on the motion to suppress, the prosecution elicited no evidence of any reason to impound the minivan other than to prevent Perez from unlawfully driving it after being cited and released. Exercising our independent judgment under the totality of the circumstances, we conclude the prosecution failed to present sufficient evidence to prove that Officer Bernardo's decision to impound Perez's minivan and conduct an inventory search was reasonable under the Fourth Amendment.[8]

Because the impoundment and resulting inventory search violated Perez's Fourth Amendment rights, and because the People have made no argument in this matter that the search of the hotel room was made pursuant to a valid warrant or the good faith exception to the exclusionary rule should apply, we reverse the judgment with directions for the trial court to permit Perez to withdraw his no contest pleas. If Perez elects to withdraw his pleas, the trial court shall vacate its order denying Perez's suppression motion, grant the motion, and conduct further proceedings consistent with this opinion.

## III. DISPOSITION

The judgment is reversed and the matter is remanded with directions for the trial court to permit Perez to withdraw his no contest pleas. If Perez elects to withdraw his pleas, the trial court shall vacate its order denying

---

[8] Given our conclusion, we need not address Perez's additional challenge to the propriety of the inventory search itself.

Perez's motion to suppress evidence, grant the motion, and conduct further proceedings consistent with this opinion. If Perez elects not to withdraw his no contest pleas, the judgment will be reinstated.

_____
Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Bromberg, J.

**H053314**
***People v. Perez***

Trial Court:   County of Santa Clara

Trial Judge:   Hon. Franklin E. Bondonno

Counsel:        J. M. Malik, by appointment of the Court of Appeal under the
                    Sixth District Appellate Program, for Defendant
                    and Appellant.

                    Rob Bonta, Attorney General, Charles C. Ragland, Chief
                    Assistant Attorney General, Jeffrey M. Laurence, Senior
                    Assistant Attorney General, Donna M. Provenzano,
                    Supervising Deputy Attorney General and Julia Y. Je,
                    Deputy Attorney General, for Plaintiff and Respondent.

**H053314**
*People v. Perez*